**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**RANDALL J. MULVEY, SR.,**

    **Plaintiff,**

v.

**Case No.: 2:19–cv–2400**
**JUDGE GEORGE C. SMITH**
**Magistrate Judge Deavers**

**UNITED MINE WORKERS OF AMERICA**
**HEALTH AND RETIREMENT FUND,**

    **Defendant.**

**OPINION AND ORDER**

This matter is before the Court upon Defendant Trustees of the United Mine Workers of America ("UMWA") 1974 Pension Trust's ("1974 Pension Trust")[1] Motion to Dismiss Plaintiff's Complaint. (Doc. 2). Plaintiff has filed several letters with the Court as well as two separate Responses in Opposition to the Motion to Dismiss. (Docs. 11, 13, 15, and 19). Additionally, Plaintiff filed a Motion for Jury Trial and Motion to Stay. (Doc. 14). These motions are fully briefed and ripe for review. For the reasons that follow, Plaintiff's Motion for Jury Trial and Motion to Stay is **DENIED** and Defendant's Motion to Dismiss is **GRANTED**.

**I. BACKGROUND**

Plaintiff Randall Mulvey, Sr., a resident of Belmont County, Ohio, filed this *pro se* Complaint in the Belmont County Court of Common Pleas on May 7, 2019. Plaintiff exhausted his administrative remedies via the 1974 Pension Plan's appeal process. Defendant removed the

---

[1] Plaintiff named Defendant, the UMWA Health and Retirement Fund, however, Defendant asserts that this name is incorrect and that name is only a collective reference given to a group of several benefit trusts. The named Defendant should be the "Trustees of the UMWA 1974 Pension Trust," as benefits under the UMWA 1974 Pension Plan are awarded by the Trustees of the UMWA 1974 Pension Trust.

action to this Court on June 7, 2019. (Doc. 1). Plaintiff asserts that he retired from the McElroy coal mine after 45 years of service and was entitled to receive his union pension from UMWA. (Doc. 3, Compl.). The 1974 Pension Plan is an employee benefit plan regulated by ERISA as amended, 29 U.S.C. § 1001 *et. seq.*, and the 1974 Pension Trust is a trust fund established pursuant to and in accordance with the requirements of Section 302 of the Labor Management Relations Act as amended, and 29 U.S.C. § 186. The 1974 Pension Trust provides pension benefits to eligible mine workers under the terms of the 1974 Pension Plan. As set forth in his Complaint, Plaintiff is a participant in the 1974 Pension Plan, who is currently collecting his benefits, which commenced on August 1, 2014, and continue to date.

Plaintiff's Complaint is based on the effect of a Qualified Domestic Relations Order ("QDRO")[2] on Plaintiff's pension benefits under the UMWA 1974 Pension Plan ("the 1974 Pension Plan"). Pursuant to the QDRO, the 1974 Pension Plan was to pay Plaintiff's ex-wife, Laureen C. Mulvey, a pension benefit as part of the Mulvey's property distribution from their divorce. The terms of the QDRO allowed Ms. Mulvey to commence her benefits at any time on or after the Plaintiff's earliest retirement age and provided that her benefit be based on her life expectancy and payable for her lifetime.

The relevant language assigning the interest in Plaintiff's benefits to his ex-wife is set forth in paragraphs 7 and 8 of the QDRO, which state as follows:

> 7. Amount of Alternate Payee's Benefit: This Order assigns to Alternate Payee an amount equal to the actuarial equivalent of 50 percent of the Marital Portion of the Participant's Accrued Benefit under the Plan as of the Participant's benefit commencement date, or the Alternate Payee's benefit commencement date, if earlier . . .

---

[2] The QDRO at issue is referred to in Plaintiff's Complaint and Defendant attached the QDRO to the Notice of Removal. (*See* Doc. 1–2). The QDRO is central to Plaintiff's claim and therefore may be considered at part of the pleadings in deciding the Motion to Dismiss. *See Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

> 8. Commencement Date and Form of Payment to Alternate Payee: The Alternate Payee may elect to commence her benefits on or after the Participant's Earliest Retirement Age as defined by Section 414(p)(4)(B) of the Code. The Alternate Payee may elect to receive her benefits in any of the allowable benefit options permitted under the terms and provisions of the Plan, other than a Joint and Survivor Annuity with her current spouse as beneficiary. The form of benefit elected by Alternate Payee is to be based on the life expectancy of such Alternate Payee. Any actuarial reduction which might be necessary to convert Alternate Payee's benefits to one based on the Alternate Payee's lifetime should be applied to the Alternate Payee's benefits . . .

(Doc. 1–2, QDRO at 2).

After commencing her benefits and while in pay status, Ms. Mulvey died on April 6, 2018. Following Ms. Mulvey's death, Plaintiff inadvertently received her monthly payment from the pension plan for four months (May, June, July, and August 2018). However, Plaintiff was notified that this was done in error and he was required to repay the overpayment amount of $2,150.32. The UMWA 1974 Pension Plan further notified Plaintiff that the assignment to his ex-wife was a separate interest and reversion to him was not permitted. (Doc. 2, Def.'s Ex. B).[3] Plaintiff not only disputes that demand from the pension plan to return the overpayment but demands that he continue to receive his ex-wife's monthly payment of $537.58 until his death.

The QDRO specifically includes a paragraph pertaining to reversion and a "savings clause," which provide as follows:

> 10. Death of Alternate Payee. If Alternate Payee predeceases Participant, the Alternate Payee's portion of Participant's benefits, as stipulated herein, shall revert to the Participant.
>
> 11. Savings Clause: This Order is not intended, and shall not be construed in such a manner as to require the Plan:

---

[3] Defendant's Exhibit B is a copy of the October 10, 2018 letter from the 1974 Pension Plan to Plaintiff describing that the alternate payee was in pay status when she died, and her separate interest could not revert to Plaintiff. This document is referred to in Plaintiff's Complaint and is central to his claim. Therefore, this document is considered part of the pleadings, and the Court may consider it when deciding this Motion to Dismiss. *See Weiner*, 108 F.3d at 89.

(a) to provide any type of form of benefit option not otherwise provided under the terms of the Plan;
(b) to require the Plan to provide increased benefits determined on the basis of actuarial value; or
(c) to require the payment of any benefits to the Alternate Payee which are required to be paid to another Alternate Payee under another Order which was previously determined to be a QDRO.

(Doc. 1–2, QDRO at 2).

## II. STANDARD OF REVIEW

Defendant brings this motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, alleging that Plaintiffs have failed to state a claim upon which relief can be granted.

Under the Federal Rules, any pleading that states a claim for relief must contain a "short and plain statement of the claim" showing that the pleader is entitled to such relief. Fed. R. Civ. P. 8(a)(2). To meet this standard, a party must allege sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A claim will be considered "plausible on its face" when a plaintiff sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 12(b)(6) allows parties to challenge the sufficiency of a complaint under the foregoing standards. In considering whether a complaint fails to state a claim upon which relief can be granted, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. Thus,

while a court is to afford plaintiff every inference, the pleading must still contain facts sufficient to "provide a plausible basis for the claims in the complaint"; a recitation of facts intimating the "mere possibility of misconduct" will not suffice. *Flex Homes, Inc. v. Ritz-Craft Corp of Mich., Inc.*, 491 F. App'x 628, 632 (6th Cir. 2012); *Iqbal*, 556 U.S. at 679.

### III.　DISCUSSION

Plaintiff has moved for a jury trial and to stay this matter. The Court will address these preliminary matters first and then, if proper, will turn to Defendant's Motion to Dismiss Plaintiff's Complaint.

**A.　Plaintiff's Motion for a Jury Trial and Motion to Stay**

Plaintiff first requests a jury trial in this matter, which he asserts his is afforded under the 7th Amendment to the United States Constitution. (*See* Doc. 14 at 1). Defendant has responded that there is no right to a jury trial in actions arising under Section 502(a) of ERISA.

This action arises under Section 502(a) of ERISA, 29 U.S.C. § 1132. 29 U.S.C. § 1132(a) states in pertinent part:

> (a) Persons empowered to bring a civil action. A civil action may be brought--
> 　　(1) by a participant or beneficiary--
> 　　　　(A) for the relief provided for in subsection (c) of this section, or
> 　　　　(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
> 　　　　　　*　　　*　　　*
> 　　(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan…

The Sixth Circuit has stated that, "ERISA does not include any provisions regarding the right to a jury trial. The United States Court of Appeals for the Sixth Circuit has held that ERISA claims are equitable in nature and thus not eligible for a jury trial." *Howard v. Prudential Ins. Co.*

*of Am.*, 248 F. Supp. 3d 862, 868 (citing *Wilkins v. Baptist Healthcare Sys.*, 150 F.3d 609, 616); *see also Bender v. Newell Window Furnishings, Inc*., 681 F.3d 253, 262 (6th Cir. 2012) (stating that it is "settled" that there is no right to a jury trial in this context). In addition, these cases are limited to a court's review of the administrative record that was before the plan administrator at the time of its decision. *See Wilkins*, 150 F.3d at 615.

Based on the aforementioned, Plaintiff's claims are equitable in nature and therefore not eligible for a jury trial. Accordingly, Plaintiff's Motion for a Jury Trial is **DENIED**.

In the same Motion, Plaintiff requests the Court stay this action for 60 days due to his daughter having surgery and cancer treatments. More than sixty days have passed since Plaintiff made that request and he has filed multiple responses to Defendant's Motion to Dismiss, therefore, the Court will deem Plaintiff's Motion to Stay **MOOT** and proceed with ruling on the fully briefed Motion to Dismiss.

**B.     Defendant's Motion to Dismiss**

Defendant moves to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Specifically, Defendant argues that based on ERISA and the QDRO, Ms. Mulvey's benefits do not revert to Plaintiff if she dies after commencing receipt of benefits. Plaintiff demands that Ms. Mulvey's benefits revert to him based on the language set forth in Paragraph 10 of the QDRO, which states: "10. Death of Alternate Payee. If Alternate Payee predeceases Participant, the Alternate Payee's portion of Participant's benefits, as stipulated herein, shall revert to the Participant." (Doc. 1–2, QDRO at 2). The Court must therefore consider the applicable law with respect to ERISA and QDROs.

There are two basic types of QDROs – "shared payment" and "separate interest." *See Samaroo v. Samaroo,* 193 F.3d 185, 188 n.2 (3d Cir. 1999); *see also Anderson v. Suburban Teamsters of N. Ill. Pension Fund Bd. of Trs*., 588 F.3d 641 (9th Cir. 2009). The two types of QDROs have been distinguished by commentators as follows. A shared payment QDRO typically assigns a fixed percentage of a participant's monthly benefit to the alternate payee, who is unable to receive benefits until the participant has gone into pay status. *See* Cynthia A. Samuel & Katherine S. Spaht, Fixing What's Broke: Amending ERISA to Allow Community Property to Apply upon the Death of a Participant's Spouse, 35 Fam. L.Q. 425, 441 (2001). A separate interest QDRO, on the other hand, divides the actual pension into two different pensions, one for the plan participant and one for the alternate payee, before the participant begins collecting benefits and allows both the participant and the alternate payee to each elect a form of benefits for their respective separate shares. Because there are two pensions, the alternate payee can receive her benefit "at a time and in a form different from that chosen by the participant." *Anderson*, 588 F.3d at 651–52; Samuel & Spaht, 35 Fam. L.Q. at 440-41; Gary A. Shulman, Qualified Domestic Relations Order Handbook 135, 148 (2d Ed. 1999).

> [U]nder the separate interest approach, there is no reversion of benefits to the participant if the alternate payee predeceases the participant after the alternate payee's benefit commencement date . . . because the alternate payee's benefits have been actuarially adjusted to his or her own lifetime. Upon the alternate payee's death, the benefits will permanently cease.

*Id*. at 135-36.

Here, the Mulveys' QDRO grants to Ms. Mulvey [Alternate Payee] "an amount equal to the actuarial equivalent of 50 percent of the Marital Portion of the Participant's Accrued Benefit under the Plan as of the Participant's benefit commencement date, or the Alternate Payee's benefit commencement date, if earlier." (Doc. 1–2, QDRO at 2). Therefore, because Ms. Mulvey was

assigned separate property, "50 percent of the Marital Portion of the Participant's Accrued Benefit, this constitutes a separate interest QDRO. (*Id.*). And, as set forth above, for separate interest QDROs, the alternate payee's benefit permanently ceases upon her death, the benefit does not revert to the participant. *See Szydlowski v. Pension Ben. Guar. Corp.*, 2006 U.S. Dist. LEXIS 87986, *19-23 (E.D. Mo. Apr. 7, 2006) (finding that there is no reversion of benefits to participate when QDRO assigned separate interest to alternate payee). Therefore, Ms. Mulvey's interest ceased upon her death.

However, as set forth in Paragraph 10 of the QDRO and what Plaintiff relies on in bringing this case, is that the alternate payee's share can revert to the participant if the alternate payee dies prior to his/her benefit commencement date, because that would be prior to the division of the benefit. After the alternate payee's commencement date, the alternate payee's benefits have been actuarially adjusted to her own lifetime. Shulman opines:

> [t]he parties have played the actuarial guessing game—by instructing the plan administrator to provide the alternate payee with her own actuarially adjusted separate interest to a lifetime pension. If the alternate payee lives 30 years longer than the participant, the alternate payee will still receive benefits, but if the alternate payee dies just two months after the benefits start, all benefit entitlements will cease and nothing will revert to the participant.

Shulman, *supra*, at §6.02[C].

Additionally, if the Court were to allow Ms. Mulvey's benefit to revert back to Plaintiff, that would require the 1974 Pension Plan to provide increased benefits, which is prohibited by paragraph 11 of the QDRO and ERISA. Paragraph 11 specifically states that the QDRO "shall not be construed in such a manner as to require the Plan . . . to provide increased benefits on the basis of actuarial value[.]" (Doc. 1–2, QDRO at 3); *see also* ERISA §206(d)(3)(D)(ii), 29 U.S.C. §1056(d)(3)(D)(ii) (containing language which mirrors that of paragraph 11).

Therefore, based on ERISA, the applicable case law, and the QDRO, Plaintiff's argument that paragraph 10 of the QDRO provides for reversion of Ms. Mulvey's benefits to him is incorrect. That provision allows for reversion of the alternate payee's benefit only if the alternate payee predeceases the participant prior to the alternate payee's commencement date. Accordingly, Plaintiff cannot maintain a cause of action seeking reversion of Ms. Mulvey's benefits.

## IV. CONCLUSION

Based on the foregoing, Plaintiff's Motion for a Jury Trial is **DENIED** and Plaintiff's Motion to Stay is **DENIED AS MOOT** (Doc. 14). Further, Defendant's Motion to Dismiss is hereby **GRANTED** (Doc. 2).

The Clerk shall **REMOVE** Documents 2 and 14 from the Court's pending motions list. The Clerk shall enter final judgment in favor of Defendant and **REMOVE** this case from the Court's pending cases list.

**IT IS SO ORDERED.**

                                                  */s/ George C. Smith*
                                                  **GEORGE C. SMITH, JUDGE**
                                                  **UNITED STATES DISTRICT COURT**